Curia, per JohNstoN, Ch.
The whole case turns upon the liability of Glenn, as endorser, either independently of the judgment confessed by him, or under that judgment: because, if he was not liable, in one or the other of these ways, he had no right to enforce the mortgage which he had taken for his indemnity; and, of course, could confer no such right by assigning the mortgage. The appeal, therefore, involves but two questions.
1. Was Glenn liable to Rice upon the note endorsed by him for Dubois 1
2. Was he made liable by the judgment ?
The argument of the appellant’s counsel was one of uncommon ability, and, for a time, shook the opinion I formerly entertained ; but mature reflection has satisfied me that the decree is right upon both points.
The evidence is, that the note was endorsed by Glenn for the purpose of being used as a renewal of the one already in bank. It cannot be doubted, that if the bank had received it, after the notice given them by Glenn, they could not have held him liable as endorser. His accommodation endorsement was a voluntary contract, from which he was at liberty, as between himself and Dubois, to recede at any moment he pleased ; and the note could not be transferred so as to make him liable to third persons, unless they received it in the due course of trade and without notice.
*93 It was transmitted by Dubois to Rice, as his agent, to be discounted in bank as a renewal of the former note. As I have said, if it had reached its intended destination, after the notice imparted to the bank by Glenn, he would not have been liable to the bank. But the right is now asserted on the part of the agent of Dubois, to intercept it, and carve out of it an indemnity for a liability previously incurred by Dubois to the agent; which, however, was not known at the time the note came to the agent’s hands.. The answer to this claim is that, at the time the note came to the hands of Rice, the agent, it had no legal inception ; that he received it out of the due course oí business and with notice ; and that, in fact, the property/in the nóte was never transferred, nor intended to be transferred,.to him.
The principle, though not the precise question, is well examined in the case of Coddington vs. Bay, 20 Johns. R. 645, referred to in the circuit decree. Most of the cases relating to the right which a holder acquires in negotiable paper, are collected and commented on by Mr. Justice Woodworth. After stating the general rule, that, where such paper is transferred for a valuable consideration, and without notice of any fraud, such transfer is good, he says, “ the reason of the .rule would seem to be, that the innocent holder, having incurred loss by giving credit to the paper, and having paid a iair. equivalent, is entitled to protection. But,” continues he, “ what superior equity has the holder, who made no advances, nor incurred any responsibility, on the credit of the paper he received 7 — whose, situation will be improved, if he is allowed to retain; but, if not, is in the condition he was before the paper was passed.” “ Although,” says he, “ the rule is laid down, generally, that the holder will be protected— where the bill or note is taken in the usual course of trade, for a fair and valuable consideration, and without notice; — in every case I have met with, where” he prevailed, “it appeared that the holder gave credit to the paper, received it in the way of business, and gave money or property in exchange.”
It is impossible, from the evidence in this case, to say'that Rice incurred the liability, which he did inctir for Dubois, with refer-rence to or on the faith of this note. He incurred it upon the faith of the preceding note: nor. does it appear that there was any stipulation on his part that that note should be renewed. It is unnecessary to repeat what is said in the decree, that he paid nothing for this note, and that he received it as a mere agent and with full notice of the purpose for which it was created.
A case has been referred to in support of this appeal, which, *94 it appears to me, has been misconceived. It is the case of Powell vs. Waters, 17 Johns. R. 176. It is to the effect that where A. made a note payable to B., or order, which was endorsed by B., for the purpose of being discounted at a bank for the accommodation of A., who, on being refused at the bank, negotiated it to a third person, with a knowledge of the circnmstances, — this does not amount to a fraud, which can affect the rights of the holder against the maker or endorser. But that case differs from this in several particulars. The diverting the note from its destination in bank worked no actual injury to the endorser, nor does he appear to have attempted to intercept its negotiation. The note was actually transferred to the third person, instead of being delivered to him as agent, as in this case. And he paid the money for it, (although he received it with notice,) which is not the case here. The case referred to, therefore, if it were of less doubtful authority than it is, could not govern this case.
I am, also, now perfectly satisfied upon the other point in the case. If the judgment had gone against Glenn by default; or even if he had confessed the judgment without more, I concede this would have been evidence of such liability on his part as would have entitled him to enforce the mortgage. But the testimony was, that “ he confessed the judgment on the note, on condition that he was to assign over the mortgage and be acquitted.” The judgment was clearly colourable. As the stipulation- was, that it should be discharged and go for nothing, why was not the mortgage assigned without it ? The manifest intent was to create the appearances of a liability, in order to support the assignment, when no real liability was contemplated by either party to the transaction.
It is ordered, that the decree be affirmed, and the appeal dismissed .
Harper and Dunkin, CO., concurred.
Johnson, Ch., being related to some of the parties, gave no opinion.